IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANITA SCHAFF,                                    3:14-CV-00632-KI

        Plaintiff,                            OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

        Defendant.

KING, Judge.

    Plaintiff Anita Schaff seeks judicial review of a final
decision of the Commissioner of the Social Security Admini-
stration (SSA) in which she denied Plaintiff's application for
Disability Insurance Benefits (DIB) under Title II of the Social
Security Act. This Court has jurisdiction to review the
Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

1 - OPINION AND ORDER

Following a review of the record, the Court  the decision of the Commissioner and   this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed her application for DIB on January 24, 2012, and alleged a disability onset date of February 12, 2008.  Tr. 157.[1]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on June 6, 2013.  Tr. 26-51.  At the hearing Plaintiff was represented by an attorney.

The ALJ issued a decision on June 21, 2013, in which he found Plaintiff was not disabled because she failed to establish the existence of a severe impairment before her date last insured of June 30, 2010.  Tr. 18.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on September 19, 1951, and was 55 years old on her alleged onset date.  She completed high school.  Tr. 30.  Plaintiff has past relevant work experience as a kitchen assistant and cashier.  Tr. 31, 32.

---

[1]  Citations to the official transcript of record filed by the Commissioner on January 30, 2012, are referred to as "Tr."

Plaintiff alleges disability due to "depression, diabetes type 2, migraines, fibromyalgia, anxiety." Tr. 157.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9th Cir. 2009)).  It is more than a mere scintilla [of evidence]
but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d
at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 416.920(a)(4)(I).  *See also Keyser v.
Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner

determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her December 16, 2006, onset date through June 30, 2010, her date last insured.  Tr. 18.

At Step Two the ALJ found medically determinable impairments of depressive disorder, anxiety disorder, hypertension, and migraine headaches through the Plaintiff's date last insured, June 30, 2010.  *Id.*  The ALJ found Plaintiff's impairments did not significantly limit her ability to perform basic work-related activities for 12 consecutive months prior to June 30, 2010, and that therefore Plaintiff did not have a severe impairment or combination of impairments.  Tr. 18.

## THE MEDICAL EVIDENCE AND TESTIMONY

A.  Medical Evidence

In May 2006 Plaintiff was seen by Marcia A. Bechtold, M.D. for a migraine, insomnia, depression, anxiety, and family stress. Tr. 217.  She was referred to mental health for counseling.

In July 2006 Susan S. Hook, L.M.F.T., conducted a mental health evaluation, noting that depression and anxiety symptoms for the past two months were "moderate."  Tr. 219.  Diagnosis was

5 - OPINION AND ORDER

deferred.

On February 10, 2009, Dr. Bechtold noted ongoing problems with stress and anxiety.  Tr. 231.  Plaintiff reported she was afraid to answer the phone and not sleeping.  Dr. Bechtold wrote she suspected Plaintiff's fatigue was secondary to depression and anxiety.  Dr. Bechtold prescribed Prozac, clonazepam and lorazepam.

On February 27, 2009, Plaintiff was seen in the emergency room for a migraine.  Tr. 234.

On April 7, 2009, John C. Walker, M.S.W., reviewed Plaintiff's medical record and performed a Mental Health Intake Evaluation.  Tr. 235-39.  Plaintiff reported serious family stress and symptoms of both depression and anxiety, increased since November.  On the Burns Mood Survey Plaintiff scored 16 in the area of depression, which is in the high-moderate to low-severe range.  Tr. 237.  Her anxiety score was 18, which is in severe range for anxiety.  Her anger score was 15, which is in the high-moderate to low-severe range.  Mr. Walker diagnosed anxiety disorder, NOS, and depressive disorder, NOS, and assessed a GAF of 60.  Tr. 238.

On June 1, 2009, Clyde K. Miller, L.C.S.W. counseled Plaintiff.  He noted a tearful affect when discussing past losses and unresolved issues.  Tr. 244.

Plaintiff saw Mr. Miller again on November 30,2009.  Tr.

245.  Her mood and affect were anxious and stressed, and the
diagnosis was "depression, major, single episode, moderate."  *Id.*

On January 6, 2010, Mr. Miller reported stress and
depression, with heightened anxiety, and diagnosed depression,
major, recurrent, moderate.  Tr. 246.

On February 11, 2010, Mr. Miller noted heightened anxiety
and depression from adult daughter's report of childhood sexual
abuse.  He diagnosed depression, major, recurrent, moderate.  Tr.
247.

On March 12, 2010, Steven P. Goldsmith, M.D., found
Plaintiff depressed and insomniac.  Tr. 248.  He noted Plaintiff
was "perhaps slightly less anxious but still excessively so."
*Id.*  Dr. Goldsmith stated Effexor was not helping and prescribed
Cymbalta for Major Depressive Disorder.

On June 21, 2010, Mr. Miller counseled Plaintiff with the
diagnosis of anxiety disorder.  Tr. 249.

Plaintiff continued reporting anxiety and depression after
her date last insured of June 30, 2010, through 2011.

On March 27, 2012, Pavan Somusetty, M.D., wrote a letter
addressed "To whom it may concern," in which he stated Plaintiff
had been under his psychiatric care since June 21, 2010, and had
received regular treatment in Kaiser's mental health clinic since
March 6, 2009, for Depressive Disorder and Anxiety Disorder.  Tr.
205. Dr. Somusetty wrote Plaintiff's "symptoms have often been

severe and the treatments themselves can have significant side
effects, both of which may interfere with her ability to engage
in substantial, gainful work activity." *Id.*

B.  Plaintiff's Testimony

    Plaintiff testified that, during the period at issue, she
was taking Prozac for depression, Demerol for migraines, and a
tranquilizer for anxiety.  Tr. 33-34.  She began seeing a
counselor in 2009.  Tr. 42.  Until about June 2012, she attended
church weekly, and she taught Sunday school until 2005 or 2006.
Tr. 37.  She stopped teaching the class because she "couldn't do
that anymore either with migraines and depression. It's not fair
for the children."  Tr. 37.  Plaintiff testified her husband does
most of the cooking and they do the dishes and laundry together.
Tr. 40.  She vacuums half of the living room before requiring
rest.

    Plaintiff testified that, during the period at issue, she
was eating and sleeping a lot, and did not get dressed on some
days.  Tr. 43.  She had anxiety attacks that could last two or
three days, and migraines that could last five days.  Tr. 44.
When she had anxiety attacks at work she would have to go home.
Anxiety attacks cause her to have racing thoughts, breathe
heavily, sweat, and sometimes lose consciousness.  Tr. 44.
Plaintiff stated that depression was the biggest obstacle to
working because it caused her to lose motivation, have racing

thoughts, and caused her to be upset and unable to focus on what she was doing.  Tr. 46.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) finding medically determinable impairments not severe at Step Two, during the period at issue, December 16, 2006 through June 30, 2010; and (2) finding Plaintiff less than fully credible.

**I.  Step Two**

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments.  *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).  The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe."  According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities."   20 C.F.R. § 404.1521(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. § 404.1521(b).

/ / /

/ / /

/ / /

9 - OPINION AND ORDER

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 U.S. at 153-54.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  *See* SSR 85-28; *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir 1988) (adopting SSR 85-28).  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone.  20 C.F.R. § 404.1508.

At step two, the claimant bears the burden to show the existence of medically determinable impairments that have more than a minimal effect on his ability to perform work-related activities.  20 C.F.R. § 404.1520(a)(4)(ii); *Tackett v. Apfell,* 180 F.3d 1094, 1099 (9th Cir. 1999); *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007).

At step two, an impairment can only be established "if the record includes signs–the results of 'medically acceptable clinical diagnostic techniques,' such as tests–as well as symptoms, *i.e.,* [Plaintiff's] representations regarding his impairment." *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005)(quoting Social Security Ruling (SSR) 96-4p, *available at* 1996 WL 374187, at *1 n.2).  The existence of an impairment

requires a diagnosis.  Symptoms alone are insufficient.  *Ukolov,*
420 F.3d at 1005-06.  Only acceptable medical sources may
diagnose and establish that a medical impairment exists.  20
C.F.R. § 416.913(a); SSR 06-03p, *available at* 2006 WL 2329939, at
*2.  "Thus, regardless of how many symptoms an individual
alleges, or how genuine the individual's complaints may appear to
be, the existence of a medically determinable physical or mental
impairment cannot be established in the absence of objective
medical abnormalities; *i.e.,* medical signs and laboratory
findings."  SSR 96-4p, at *1.

      The ALJ found Plaintiff sought treatment for depression and
anxiety before June 30, 2010, but mistakenly stated Plaintiff
sought no counseling prior to that date.  Tr. 20. The ALJ
erroneously found Plaintiff had no counseling after 2006.  *Id.*
The ALJ found the medical evidence of mental impairments prior to
June 30, 2010, indicates Plaintiff had symptoms of depression and
anxiety that fluctuated with life stressors, but were generally
well controlled by medication and were not so severe as to
interfere with Plaintiff's ability to function in a work setting.
/ / /
/ / /
/ / /
/ / /
/ / /

11 - OPINION AND ORDER

The ALJ noted the opinion of Dr. Somusetty and gave it "little weight because Dr. Somusetty is vague in assessing the claimant's functionality and the opinion is not supported by any objective evidence."  Tr. 21. Almost all of Plaintiff's care occurred through Kaiser, and Dr. Somusetty had access to those medical records, including the April 2009 testing indicating severe anxiety, high-moderate to low-severe range depression, and high-moderate to low-severe range of anger.

On this record, the ALJ's determination that Plaintiff failed to meet her burden of establishing a medically determinable impairment that caused more than a minimal effect on her ability to perform work-related activities was not supported by substantial evidence.

## II.  Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008).  The ALJ's findings, however, must be supported by specific, cogent reasons.  *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).  *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001).  Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and

convincing." *Id.* The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Id.* at 724. *See also Holohan,* 246 F.3d at 1208. General findings (*e.g.,* "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged." *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08. The *Cotton* test imposes only
> two requirements on the claimant:(1) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*

> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.  *See also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ found Plaintiff's statements as to the severity of her impairments less than fully credible. Tr. 21.  The ALJ stated he found Plaintiff to be a poor historian, and that she testified she stopped working because she was physically unable to lift and carry heavy items.  *Id.*  However, when the ALJ asked Plaintiff why she stopped working she responded she "could not physically and mentally do the work."  Tr. 31.  The ALJ stated this inconsistency in Plaintiff's testimony erodes her credibility as to her ability to function before June 30, 2010, but there is no actual inconsistency.

The ALJ states that Plaintiff stopped working for family reasons, citing "Ex.F," which is 88 pages in length.  This court declines the opportunity to search the record for evidence supporting the ALJ's assertion.

The ALJ failed to articulate clear and convincing reasons to find Plaintiff's symptom testimony less than fully credible. On this record, the court finds the ALJ erred because his conclusions are not supported by substantial evidence in the record.

/ / /

/ / /

14 - OPINION AND ORDER

## **CONCLUSION**

For these reasons, the court reverses the decision of the Commissioner and **remands** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order

IT IS SO ORDERED.

DATED this _____17th_____ day of February, 2015.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge
